UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL ANN RIVETTE,

            Plaintiff,                Case No. 2:21-cv-12605
                                         District Judge Linda V. Parker
v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

            Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20) and AFFIRM THE COMMISSIONER'S DECISION

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment

(ECF No. 20), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff Carol Ann Rivette brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security (Commissioner)

denying her application for Disability Insurance (DI) benefits.  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 13), the Commissioner's cross-motion for summary judgment (ECF No. 20), Plaintiff's reply (ECF No. 21), and the administrative record (ECF No. 9).

### A.    Background and Administrative History

#### 1.    First hearing

Plaintiff filed her application for disability insurance benefits (DIB) on April 26, 2010, alleging that her disability began on August 6, 2009, at the age of 48. (ECF No. 9, PageID.168.)  In her disability report, she listed fibromyalgia, polymyalgia rheumatica, chronic fatigue syndrome, polyneuropathy, cervical disc degeneration, scoliosis, temporal arteritis, and severe, chronic pain as limiting her ability to work.  (ECF No. 9, PageID.188.)  Her application was initially denied on June 22, 2010.  (ECF No. 9, PageID.116-117.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ) (ECF No. 9, PageID.131-132), which was held by ALJ Jessica Inouye on April 12, 2011 (ECF No. 9, PageID.68-104).  On April 21, 2011, ALJ Inouye issued an opinion which determined that Plaintiff was not disabled within the meaning of the Social Security Act from August 6, 2009, the alleged onset date, through the date of the decision.  (ECF No. 9, PageID.47-67.)  In so doing, she found that Plaintiff was unable to perform her past relevant work as a merchandise manager.  (ECF No. 9,

PageID.61.)  Further, ALJ Inouye evaluated the medical opinion evidence

available at the time, stating, in part:

> Opinions on issues reserved to the Commissioner can never be
> entitled to controlling weight, but must be carefully considered to
> determine the extent to which they are supported by the record as a
> whole or contradicted by persuasive evidence (Social Security Ruling
> 96-5p).  The undersigned considered the restrictions given by Dr.
> O'Brien, such that he opined she would be able to work 20 hours a
> week with the option to sit or stand at will (6F/4).  The undersigned
> accords some weight to Dr. O'Brien's assessment of the need of a sit
> and stand option, but weight is reduced, as the medical evidence of
> record does not support Dr. O'Brien's opinion that the claimant was
> unable to work more than 20 hours a week.
>
> In April 2011, Dr. O'Brien completed several forms regarding the
> claimant's residual functional capacity.
>
> *  *  *
>
> The undersigned considered the most recent assessments of Dr.
> O'Brien, assigning them little weight, as these assessments are
> inconsistent with the medical evidence of record and the claimant's
> testimony at the hearing.  Additionally, these assessments appear to be
> based on the claimant's subjective symptoms, rather than her actual
> abilities.

(ECF No. 9, PageID.59-60.)

Plaintiff submitted a request for review of the hearing decision/order (ECF

No. 9, PageID.166-167), which the Appeals Council denied on November 27, 2012

(ECF No. 9, PageID.31-36).  She then challenged the decision in this Court, and in

Case No. 13-cv-10177, Judge Zatkoff remanded the case on February 12, 2014, for

further consideration, stating:

3

Plaintiff argues that the ALJ—while adopting most of the restrictions suggested by Plaintiff's treating physician, Dr. O'Brien—failed to state or explain why she rejected Dr. O'Brien's restrictions that Plaintiff (1) is limited to working 20 hour[s] per week and (2) needs unscheduled work breaks due to pain.  The Court construes this argument as one challenging the "treating source" rule as it relates to Dr. O'Brien.

\*  \*  \*

In rejecting Dr. O'Brien's records that reveal Plaintiff could work only 20 hours per week, the ALJ's reasoning was only that "the undersigned (*i.e.*, the ALJ) accords some weight to Dr. O'Brien's assessment of the need of a sit and stand option, but weight is reduced, as the medical evidence of record does not support Dr. O'Brien's opinion that [Plaintiff] was unable to work more than 20 hours a week."  The ALJ also concluded that the "most recent assessments of Dr. O'Brien"—which included Plaintiff's apparent need for unscheduled breaks while working—were entitled to "little weight, as these assessments are inconsistent with the medical evidence of record and [Plaintiff's] testimony at the hearing."  The Magistrate Judge noted that the ALJ did not explicitly employ the factors from § 1527 but nevertheless concluded—rather conclusively—that the ALJ provided "good reasons" for affording less than controlling weight to Dr. O'Brien's medical opinions.

Here, the Court finds that the ALJ committed error with respect to her treatment of Dr. O'Brien's opinions.  The Court disagrees with the Magistrate Judge that the ALJ's single-sentence explanations why she discounts Dr. O'Brien's opinions are "good reasons."  The ALJ decision is far from "sufficiently specific" when rejecting Dr. O'Brien's assessments and it certainly fails to identify the underpinnings of the ALJ's rationale and how her rationale affected the weight afforded to Dr. O'Brien's medical notes.  Accordingly, the Court concludes that remand is appropriate.

(ECF No. 9, PageID.649-651.)

On May 22, 2014, the Appeals Council then vacated the decision and remanded the case to an ALJ for further proceedings.  (ECF No. 9, PageID.653-656.)

### 2.    Second hearing

The second hearing was held on February 24, 2015, before ALJ Kendra S. Kleber.  (ECF No. 9, PageID.546-601.)  On June 16, 2015, she issued an opinion which again determined that Plaintiff was not disabled within the meaning of the Social Security Act from August 6, 2009, through the date of the decision.  (ECF No. 9, PageID.657-684.)  In so doing, she found that Plaintiff would be unable to perform past relevant work as a merchandise manager.  (ECF No. 9, PageID.676-677.)  She also summarized a number of Dr. O'Brien's opinions, but discounted each.  (ECF No. 9, PageID.671-674.)

The Appeals Council reviewed ALJ Kleber's decision, and on July 8, 2016, remanded the case back to the ALJ because, in part, the decision did "not contain sufficient reasons for discounting treating source Dermot D. O'Brien, M.D.'s opinions in accordance with [its] Order dated May 22, 2014."  (ECF No. 9, PageID.687.)  It then directed the ALJ to:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).  In so doing, evaluate the treating source opinions pursuant to the provisions of 20

> CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and
> explain the weight given to such opinion evidence.

(ECF No. 9, PageID.687.)

### 3.    Third hearing

On November 3, 2016, ALJ Sarah Zimmerman held the third hearing at which Plaintiff, vocational expert (VE) Paul Delmar, and medical expert Dr. Stephen Kaplan testified.  (ECF No. 9, PageID.507-545.)  On March 28, 2017, ALJ Zimmerman issued an opinion which again determined that Plaintiff was not disabled within the meaning of the Social Security Act from August 6, 2009, through December 31, 2015, Plaintiff's date last insured (DLI).  (ECF No. 9, PageID.477-506.)

Plaintiff submitted a request for review of the hearing decision/order (ECF No. 9, PageID.454-457), which the Appeals Council denied over four years later on October 7, 2021 (ECF No. 9, PageID.435-440).  Thus, ALJ Zimmerman's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on November 5, 2021.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 484 pages of medical records, which were available to the ALJ at the time of her March 28, 2017

decision.  (ECF No. 9, PageID.238-434, 981-1269 [Exhibits 1F-25F]).)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from August 6, 2009, through December 31, 2015, her DLI.  (ECF No. 9, PageID.483.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, migraine headaches, costochondritis, peripheral neuropathy, degenerative disc disease of the cervical spine, degenerative joint disease of the sacroiliac joint, scoliosis, anxiety disorder, and affective disorder. (ECF No. 9, PageID.483-484.)  At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (ECF No. 9, PageID.484-487.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> to lift and/or carry no more than 10 pounds at a time and to frequently lift and/or carry articles such as docket files, ledgers, and small tools. She could stand and/or walk for up to four hours per eight-hour workday.  She could sit for up to six hours per eight-hour workday. She required the option to change position every thirty minutes if

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

standing or walking, or every 60 minutes if sitting. The change of position should have been for five minutes while remaining on task. The claimant could occasionally reach overhead bilaterally. She could never climb ladders, ropes, or scaffolds. She could also never kneel or crawl. She could occasionally balance on a moving platform. She could occasionally stoop or crouch. She could frequently finger bilaterally. She could make frequent neck movements. She could occasionally be exposed to cold and humidity but never in extreme amounts. The claimant was unable to work at a production rate pace, such as on an assembly line. She could have frequent interaction with supervisors, coworkers, and the public. She could tolerate occasional changes in the routine work setting. In addition to normal breaks, the claimant would be off task up to five percent of the workday. The claimant would be absent on an unscheduled basis up to one day every two months, which is in effect six times per year.

(ECF No. 9, PageID.487-496.) At **Step 4**, the ALJ determined that, through her

DLI, Plaintiff was capable of performing past relevant work as a merchandise

manager. (ECF No. 9, PageID.496-498.) Alternatively, at **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined that

there were jobs that existed in significant numbers in the national economy that

Plaintiff could perform, such as records clerk and receptionist. (ECF No. 9,

PageID.496-498.) The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, from August 6, 2009, the alleged

onset date, through December 31, 2015, her DLI. (ECF No. 9, PageID.498.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case

8

under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

9

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

E.    **Analysis**

Plaintiff asserts entitlement to reversal or remand, arguing that: (1) the ALJ erred by failing to give controlling weight to the opinions of her treating physicians, and (2) the ALJ improperly reversed prior findings that she could not perform her past relevant work.  (ECF No. 13, PageID.1295-1313.)  The Commissioner opposes Plaintiff's motion, asserting that the ALJ properly evaluated the medical opinions of record, and that the ALJ did not commit harmful error at Step 4.  (ECF No. 20, PageID.1336-1365.)  In her reply brief, Plaintiff responds directly to the Commissioner's arguments.  (ECF No. 21.)  For the reasons that follow, I agree with the Commissioner.

1.    **RFC and opinion evidence**

The Plaintiff bears the burden of proof at Steps 1-4, including proving his RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citations omitted); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").

As Plaintiff filed her application before March 27, 2017, the ALJ applied the standards set forth in 20 C.F.R. § 404.1527 to analyze the medical opinions of record.  Under those standards, the ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 404.1527(b).  The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  ALJs "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . . [,]" but "are not required to adopt any prior administrative medical findings[.]"  20 C.F.R. § 404.1513a(b)(1).

### The "Treating Physician Rule" – then applicable

11

Under the regulations in place at the time of Plaintiff's application, the ALJ

was required to give deference to the opinions of a treating source "since these

sources are likely to be the medical professionals most able to provide a detailed,

longitudinal picture of [a patient's] medical impairment(s) and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective

medical findings alone . . . ." 20 C.F.R. § 404.1527(c)(2); *Blakley*, 581 F.3d at

408. Although abrogated in 20 C.F.R. § 404.1520c for claims filed after March 27,

2017, the regulations that applied to Plaintiff's case stated that:

> Medical opinions from treating sources about the nature and severity
> of an individual's impairment(s) are entitled to special significance
> and may be entitled to controlling weight. If a treating source's
> medical opinion on an issue of the nature and severity of an
> individual's impairment(s) is well-supported by medically acceptable
> clinical and laboratory diagnostic techniques and is not inconsistent
> with the other substantial evidence in the case record, the adjudicator
> must give it controlling weight.

SSR 96-8p, 1996 WL 374184, at *7. In other words, under the "Treating

Physician Rule" then in existence, an ALJ could not "substitute his own medical

judgment for that of the treating physician where the opinion of the treating

physician [was] supported by the medical evidence." *Simpson v. Comm'r of Soc.

Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quotation marks and citation omitted).

Where an ALJ did not afford controlling weight to a treating physician's

opinion, the ALJ would consider the following factors when deciding the weight to

give any medical opinion: (1) examining relationship; (2) treatment relationship;

12

(3) supportability; (4) consistency with the record as a whole; and (5) specialization. 20 C.F.R. § 404.1527(c). Special care still had to be taken when considering the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements).

However, while an ALJ was to "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] g[a]ve [a] treating source's medical opinion," 20 C.F.R. § 404.1527(c)(2), and had to "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight[,]" *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (*per curiam*) (internal quotations omitted), there was no *per se* rule that require[d] a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. § 404.1527(c), *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations then in place did not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Moreover, the failure to discuss the requisite factors could constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the

13

opinion of the treating source or makes findings consistent with the opinion"; or

(3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of

procedural safeguard of reasons—even though she has not complied with the terms

of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir.

2006) (quoting *Wilson*, 378 F.3d at 547). *See also Betty v. Comm'r of Soc. Sec.*,

No. 15-cv-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and

recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich.

Mar. 21, 2016).  "In the last of these circumstances, the procedural protections at

the heart of the rule may be met when the 'supportability' of a doctor's opinion, or

its consistency with other evidence in the record, is *indirectly* attacked via an

ALJ's analysis of a physician's other opinions or his analysis of the claimant's

ailments." *Friend*, 375 F. App'x at 551.

The United States Court of Appeals for the Sixth Circuit stressed the

importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases," particularly in situations
> where a claimant knows that his physician has deemed him disabled
> and therefore "might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the
> agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d
> Cir. 1999).  The requirement also ensures that the ALJ applies the
> treating physician rule and permits meaningful review of the ALJ's
> application of the rule. *See Halloran v. Barnhart*, 362 F.2d 28, 32-33
> (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.  Thus, the reason-giving requirement was "particularly important when the treating physician ha[d] diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

The Undersigned recognizes the procedural posture of this case, as well as the sheer number of medical opinions Plaintiff asserts support a finding of disability, but conforming to the standard of review required, believes the ALJ adequately evaluated these medical opinions, as will be discussed in much greater detail below.

### 2.    Treating physician Dermot O'Brien, M.D.

Although it appears that the record contains various opinions by Plaintiff's treating physician, Dr. Dermot O'Brien, Plaintiff summarizes in her summary judgment motion only Dr. O'Brien's November 2009 treatment note regarding full-time employment, and his April 7, 2011 medical source statement (MSS) and accompanying questionnaire.  (ECF No. 13, PageID.1296 (citing ECF No. 9, PageID.330, 426, 430-432).)

### a.    November 2009 treatment note

In a November 2009 treatment note, Dr. O'Brien opined that Plaintiff could work 20 hours per week if given the flexibility to sit and stand at will.  (ECF No. 9, PageID.330.)

### b.    April 7, 2011 MSS

In a MSS dated March 29, 2011 at the top, but signed April 7, 2011, Dr. O'Brien checked boxes indicating that: Plaintiff's pain was "[p]resent to such an extent as to be distracting to adequate performance of daily activities or work"; physical activity "[g]reatly increases pain causing abandonment of tasks related to daily activities or work"; and due to the impacts of medication, Plaintiff was "restricted from the work place and [was] unable to function at a productive level." (ECF No. 9, PageID.426.)  Additionally, he opined, without further explanation, that Plaintiff would miss all days of work in a 20-day calendar month.  (ECF No. 9, PageID.426.)

In additional pages, some of which contain handwriting that is difficult to read, Dr. O'Brien listed "occasional" depression and "frustration" as psychological conditions affecting Plaintiff's physical condition, but checked "no" when asked if her physical impairments plus any emotional impairments were reasonably consistent with the symptoms and functional limitations described in that evaluation, writing what the Undersigned believes says, "They just do not occur at same time."  (ECF No. 9, PageID.430.)  Dr. O'Brien further opined that Plaintiff frequently experienced pain or other symptoms severe enough to interfere with attention and concentration necessary to perform simple work tasks; would be capable of low stress jobs; could sit for one hour at a time and stand for 30 minutes

16

at a time, writing "but symptoms not regular"; would need to include periods of walking during a work day, but did not know for how long because it would be dependent on her symptoms; would need a job that allows for shifting positions at will; would sometimes need to take unscheduled breaks; could never lift and carry any weight; could rarely twist, stoop, crouch, or climb ladders and stairs; had significant limitations with reaching, handling, or fingering, mainly on the left side; and would likely be absent from work more than four days per month. (ECF No. 9, PageID.429-432.)

### c.    ALJ Zimmerman discounted Dr. O'Brien's opinions

ALJ Zimmerman discounted Dr. O'Brien's opinions using the factors stated in 20 C.F.R. § 404.1527(c). Her specific findings will be discussed in greater detail below.

### d.    Analysis

Again, keeping in mind the procedural posture of this case, for the reasons that follow, the Court should conclude that the ALJ thoroughly reviewed the record in this case, and gave good reasons for discounting Dr. O'Brien's opinions in accordance with the factors listed in 20 C.F.R. § 404.1527(c).

### i.    Issues reserved to the Commissioner

First, the ALJ properly discounted Dr. O'Brien's 2009 treatment note that Plaintiff could work only 20 hours per week because such a determination is

17

reserved to the Commissioner.  (ECF No. 9, PageID.492-493.)  Opinions that are

merely "administrative findings that are dispositive of a case" are reserved to

the Commissioner and, therefore, are not entitled to special significance, even

when opined by a treating source.  Examples of such administrative findings are

opinions that the claimant is disabled or unable to work.  *See Rudd v. Comm'r of*

*Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).  And Plaintiff does not appear to

actually challenge this finding in her summary judgment motion or reply brief.

### ii.    Treatment relationship vs. specialization

In accordance with 20 C.F.R. § 404.1527(c), the ALJ acknowledged Dr.

O'Brien's extensive treatment relationship with Plaintiff, but also appropriately

considered his lack of specialization, stating: "Dr. O'Brien was an examining

provider who had a longstanding treatment relationship with the claimant.

However, he is a primary care provider and not a specialist."  (ECF No. 9,

PageID.493.)  Plaintiff gives the Court no reason to find error here.

### iii.    Supportability

The ALJ next addressed the supportability of Dr. O'Brien's opinions,

stating:

> Dr. O'Brien did not provide support or an explanation for those
> opinions or his March 2011 clinical assessment of pain.  He did note
> some support for his April 2011 medical source statement, including
> body and rib pain (16F/1).  However, Dr. O'Brien's own treatment
> notes do not support his April 2011 medical source statement or any
> of his other opinions.  As noted above, Dr. O'Brien made the

18

following findings at various times from 2009 to 2011: there was no evidence of neurological problems; the claimant could raise her arms over her head; her spinal movements were good; and her power in her legs was good (6F; 10F). On at least one examination during that time, Dr. O'Brien found that the claimant was asymptomatic (10F/2). Additionally, in 2012 and 2013, Dr. O'Brien found at times that the claimant had normal range of motion in her arms. She had full range of motion in her spine (19F/4/5/8/9). Furthermore, Dr. O'Brien's treatment notes documented the following even though he continued to indicate that the claimant was unable to work: the claimant looked generally well (19F/4); the claimant moved well and walked well (19F/5); the claimant's physical problems were doing very well and the claimant was actually getting better (19F/7); the claimant's walking was much improved (19F/8); and the claimant was moving better and her posture was much improved (19F/9).

(ECF No. 9, PageID.493.)

Plaintiff challenges the accuracy of some of these findings (ECF No. 13, PageID.1300-1301), but a review of these specific medical records confirms the ALJ's summaries. Plaintiff states, for example, that the ALJ alleged that a treatment record noted full range of motion in her spine, citing ECF No. 9, PageID.1093, when in reality, "the report indicates full range of motion in the shoulder but causes spasm." (ECF No. 13, PageID.1300.) Indeed, PageID.1093 contains no notation regarding full range of motion in the spine, but the ALJ cited a series of pages following this finding, including PageID.1094, which does note, "On exam: range of motion of C-spine is normal. She has pain over the left trapezius muscle. Flexion of spine is normal." (*See* ECF No. 9, PageID.493 (citing ECF No. 9, PageID.1093-1094, 1097-1098).) She also challenges the

ALJ's citation to ECF No. 9, PageID.1097, for the finding that Dr. O'Brien's

treatment notes documented improvement in her walking, asserting that Dr.

O'Brien also noted continued pain in her back and upper chest, as well as her

report that she had given up a lot of things she used to do.  (ECF No. 13,

PageID.1300.)  But these additional notations do not negate the accuracy of the

ALJ's finding that a treatment note from January 22, 2013, provides, "[Plaintiff's]

walking is much improved."  (ECF No. 9, PageID.1097.)  Moreover, an ALJ is not

required to adopt a Plaintiff's subjective statements regarding pain and other

symptoms, *see Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 529 (6th

Cir. 1992), and the ALJ considered such subjective statements here in formulating

the RFC (*see* ECF No. 9, PageID.488).  Thus, the Plaintiff has given the Court no

reason to question the accuracy of the ALJ's record findings with regard to

supportability.

In her reply brief, Plaintiff asserts:

> Defendant alleges Dr. O'Brien did not provide support for his
> restrictions (ECF No. 20, PageID.1339), however, even ALJ
> Zimmerman acknowledged findings supporting Dr. O'Brien.  ALJ
> Zimmerman noted an abnormal EMG and decreased reflexes (ECF
> No. 9, PageID.489), positive trigger points, decreased muscle strength
> and a rheumatologist regularly reporting tenderness on exam (ECF
> No. 9, PageID.490).

(ECF No. 21, PageID.1370.)  But the Undersigned fails to see how the ALJ's

acknowledgement that some evidence in the record supports Plaintiff's

impairments and the associated RFC undercuts the ALJ's analysis of Dr. O'Brien's opinions. Rather, it demonstrates that the ALJ considered the entirety of the record before her to make her findings and reach her decision.

Furthermore, Plaintiff's argument fails to paint a complete picture. For example, the positive EMG to which she is likely referring was from 2007, well before Plaintiff's alleged onset date, and the ALJ simply uses it to establish minimal evidence of peripheral neuropathy, stating, "There is also minimal evidence specific to peripheral neuropathy other than a diagnosis (6F/6) and a December 2007 EMG that reportedly showed it (2F/1)." (ECF No. 9, PageID.489.) With regard to the trigger points, the ALJ actually stated, "A March 2011 neurological examination was also generally unremarkable other than noting trigger points in the claimant's cervical spine (14F/1)." (ECF No. 9, PageID.490 (citing ECF No. 9, PageID.423).) And finally, Plaintiff provides no evidence that Dr. O'Brien used the cited rheumatology treatment records to support his opinions, but to be clear, the ALJ acknowledged conflicting evidence in those records, stating:

> On examination with her rheumatologist throughout the relevant period, the claimant did regularly have tenderness in [a] number of areas, including her arms, hands, knees, and sacroiliac joints. However, there was no synovial thickening or chronic rheumatoid deformities. She had full range of motion in her shoulders and knees. Lumbar flexion was adequate. Her deep tendon reflexes were normal.

(ECF No. 9, PageID.490.)

### iv.     Inconsistency with the record as a whole

Next, the ALJ explicitly and thoroughly discussed the consistency of Dr.

O'Brien's opinion with the record as a whole, stating:

> Finally, and significantly, all of Dr. O'Brien's opinions are
> inconsistent with the record as a whole.  As discussed above, the
> record indicates that the claimant's fibromyalgia treatments were at
> least somewhat effective and her treatment was relatively conservative
> in that she did not attend regular physical therapy during the time of
> Dr. O'Brien's opinions.  Further, none of the physical examinations
> discussed above support disabling limitations.  On examination with
> other providers, the claimant did often have tenderness throughout.
> However, she also often had normal or only slightly reduced range of
> motion, strength, sensation, and reflexes (5F; 12F; 17F; 18F; 20F;
> 22F; 25F).  She was also largely independent in her activities of daily
> living and self-care (3F; 24F/1).  Accordingly, the undersigned gives
> little weight to all of Dr. O'Brien's opinions.

(ECF No. 9, PageID.493.)

Plaintiff argues that the ALJ cherry-picked occasional examinations to

support her inconsistency finding, and cites a number of places in the record where

her physical examinations showed reduced muscle strength, muscle spasms, and

multiple trigger points.  (ECF No. 13, PageID.1300-1302.)  However, the ALJ

acknowledged these findings alongside those unfavorable to Plaintiff's disability

claims, and found that in combination, they did not support all of the limitations

listed in Dr. O'Brien's MSS.  ALJ Zimmerman stated, in part:

> [P]hysical examinations overall showed that the claimant was capable
> of work activity consistent with the residual functional capacity
> despite the claimant's physical impairments.  An examination at the

University of Michigan in December 2009 was unremarkable.  The claimant had full 5 out of 5 strength in her upper and lower extremities.  Her sensory function and coordination were intact.  Her gait was regular.  She was able to perform tandem gait and walk on her heels and her toes (6F/31).  A March 2011 neurological examination was also generally unremarkable other than noting trigger points in the claimant's cervical spine (14F/1).

On examination with her rheumatologist throughout the relevant period, the claimant did regularly have tenderness in number of areas, including her arms, hands, knees, and sacroiliac joints.  However, there was no synovial thickening or chronic rheumatoid deformities.  She had full range of motion in her shoulders and knees.  Lumbar flexion was adequate.  Her deep tendon reflexes were normal (5F; 12F; 17F).

On examination with her physiatrist, Babu Nahata, M.D., also throughout the relevant period, the claimant had some tenderness in her neck, back, and shoulders.  At times, she also had tenderness in her elbows, hips, wrists, and knees, and mild sensory deficits and decreased reflexes.  However, she only had "slight" or "mild" limitation in her neck and low back.  At times, her range of motion was mostly within functional limits.  Spurling's test and straight leg raises were negative.  Her strength was often 4 to 4+/5.  Generally, her reflexes and sensation were intact.  She walked without an assistive device (18F; 20F; 22F).

While noting a number of subjective complaints, treatment notes from her primary care provider, Dermot O'Brien, M.D., did not always include objective findings from 2009 to 2011.  Additionally, some of the objective findings during that time indicated that there was no evidence of neurological problems, that she could raise her arms over her head, that her spinal movements were good, and that her power in her legs was good (6F; 10F).  On at least one examination during that time, Dr. O'Brien found that the claimant was asymptomatic (10F/2).  On examination with Dr. O'Brien in 2012 and 2013, the claimant had some point over her trapezius and reportedly had trouble putting her arms over her head at times.  However, at other times, she had normal range of motion in her arms.  She had full range of motion in her spine (19F/4/5/8/9).  Furthermore, and significantly, Dr. O'Brien noted the

23

following at various times throughout the record: the claimant looked generally well (19F/4); the claimant moved well and walked well (19F/5); the claimant's physical problems were doing very well and the claimant was actually getting better (19F/7); the claimant's walking was much improved (19F/8); and the claimant was moving better and her posture was much improved (19F/9).

On examination with the claimant's new primary care provider in 2015, Birjitender Singh, M.D., the claimant had uncomfortable range of motion over many joints and tenderness over many spots on her body. However, the claimant generally had normal strength, sensation, and reflexes throughout (25F).

(ECF No. 9, PageID.490-491.) Although the Undersigned acknowledges the difficult situation here—an ALJ discounting the opinion of a treating source— especially in light of the two prior remands in this case, from the above, it hardly seems like ALJ Zimmerman cherry-picked only a few examinations from the record to highlight. And one does wonder, just exactly how much more analysis would really be expected of the ALJ beyond what was supplied? Thus, reversing or remanding here would require the Court to re-weigh the evidence that the ALJ considered, which it must not do. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (it is not within the province of the Court to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ").

The varying medical evidence described above may also demonstrate the existence of intermittent symptoms, a valid consideration when, to be considered disabled under the Social Security Act, an individual's impairment(s) "must have

24

lasted or be expected to last for a continues period of at least 12 months."  20

C.F.R. § 404.1529.  Further, the ALJ noted:

> Dr. O'Brien's April 2011 medical source statement suggests that the
> claimant's symptoms were intermittent and that the limitations he
> opined were not always applicable.  For example, Dr. O'Brien
> indicated that the claimant's impairments were not reasonably
> consistent with the symptoms and functional limitations because they
> do not occur at the same time.  He also appeared to opine that the
> claimant could sit, stand, and walk for about four hours, but that she
> could not do so "at the present."  He also indicated that he did not
> know how long the claimant could walk because that depended on the
> claimant's symptoms.

(ECF No. 9, PageID.493.)

Plaintiff challenges the ALJ's interpretation of this portion of Dr. O'Brien's

MSS, asserting, "The ALJ fails to note that Dr. O'Brien was averring that

Plaintiff's physical problems were not consistent with her emotional impairment

(depression) as worsening of her physical limitations [was] not occurring at the

same time as worsening in her depression."  (ECF No. 13, PageID.1301.)  I see no

error, however, in the ALJ's interpretation.  In the MSS just below a question

asking for identification of psychological conditions affecting Plaintiff's physical

condition, to which Dr. O'Brien responded "occasional" depression, he checked

"No" next to the question "Are your patient's impairments (physical impairments

plus any emotional impairments) *reasonably consistent* with the symptoms and

functional limitations described in this evaluation?"  (ECF No. 9, PageID.430.)

And to the prompt "If no, please explain," Dr. O'Brien wrote what looks like

"They just do not occur at same time[.]"  (ECF No. 9, PageID.430.)  However, even if the ALJ's interpretation was incorrect, Dr. O'Brien still ultimately opined that her impairments were not reasonably consistent with the symptoms and functional limitations described within the MSS.

### v. Activities of daily living, effectiveness of treatment, and physical therapy

Although weaker than the justifications described above, Plaintiff has failed to convince me of any obvious error with the ALJ's remaining reasons for discounting Dr. O'Brien's opinions.  The ALJ considered Plaintiff's activities of daily living (see ECF No. 9, PageID.493), which is appropriate.[2]  *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001); *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441-42 (6th Cir. 2017).  Plaintiff acknowledges the accuracy of the ALJ's statement that her fibromyalgia treatments were at least somewhat effective, but asserts that Dr. O'Brien offered the limitations he did despite such "minimal improvement with treatment."  (ECF No. 13,

---

[2] Plaintiff specifically challenges the ALJ's interpretation and use of the evidence regarding her activities of daily living in her challenge to the ALJ's evaluation of Dr. M. Sohail Jilani's opinion, so the Undersigned will discuss the topic more thoroughly below.

PageID.1302.)[3]  But again, it is not within the province of this Court to re-weigh

the evidence.  *Reynolds*, 424 F. App'x at 414.

Plaintiff also challenges the ALJ's finding that she did not attend regular

physical therapy during the time of Dr. O'Brien's opinions, but has given no

meaningful reason to doubt the ALJ's statements that:

> [T]he claimant does not regularly attend physical therapy during the
> relevant period even though she acknowledged that physical therapy
> had provided some relief in the past (18F/8).  While the claimant did
> attend physical therapy in 2016 after her date last insured (22F/58),
> she declined physical therapy when her physiatrist offered it to her
> during the relevant period (18F/43).  Other treatment notes before her
> date last insured also noted the claimant was not attending physical
> therapy (20F/5; 22F/17).

> \* \* \*

> Finally, and significantly, all of Dr. O'Brien's opinions are
> inconsistent with the record as a whole.  As discussed above, the
> record indicates that the claimant's fibromyalgia treatments were at
> least somewhat effective and her treatment was relatively conservative
> in that she did not attend regular physical therapy during the time of
> Dr. O'Brien's opinions.

(ECF No. 9, PageID.489, 493.)  Plaintiff asserts: "No physician of record has

provided any opinion that Carol Rivette was not completely compliant with

medical treatment as alleged by ALJ Zimmerman.  Even if there was any minimal

---

[3] Dr. O'Brien's limitations are also subject to question for inconsistency with
Plaintiff's own testimony at the first hearing, with Dr. O'Brien opining that
Plaintiff could "never" lift and carry any weight whatsoever in a competitive work
situation, and Plaintiff stating she could lift and carry "approximately 10 pounds,
maybe over."  (*Compare* ECF No. 9, PageID.431, 93.)

merit to ALJ Zimmerman's argument, however, it simply is not true as Plaintiff did attend physical therapy while treating with Dr. O'Brien as noted by the treating physical (ECF No. 9, PageID.1094)."  (ECF No. 13, PageID.1302-1303.) PageID.1094 contains no evidence of Plaintiff attending physical therapy, so like Defendant, I assume Plaintiff's assertion refers to the July 29, 2012 note that she is attending appointments with Dr. Nahata.  (ECF No. 9, PageID.1094.)  And Dr. Nahata is a physiatrist, not a physical therapist.  (ECF No. 9, PageID.1094.)

Further, conservative treatment is a valid consideration when assessing a claimant's RFC.  *See Rudd*, 531 F. App'x at 725.  *See also Reid v. Comm'r of Soc. Sec.*, No. 14-CV-11455, 2015 WL 5026118, at *9 (E.D. Mich. Aug. 25, 2015) (Murphy, J. *adopting report and recommendation of* Patti, M.J.) (referencing *Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)) (noncompliance with treatment is a valid consideration in an ALJ's disability determination).

Finally, Plaintiff asserts:

> Dr. O'Brien's medical opinions are again fully consistent with the medical opinions expressed by the other four physicians referred to in ALJ Zimmerman's decision.  As with Dr. O'Brien, however, ALJ Zimmerman gives "little weight" to each of those physicians' medical opinions and restrictions: Dr. Jilani; Dr. Nahata; Dr. Singh and Dr. Kaplan.

(ECF No. 13, PageID.1303) (internal citations omitted).  I will address each in turn.

28

### 3.    Dr. M. Sohail Jilani, M.D.

#### a.    Opinion

Dr. Jilani completed opinions on February 10, 2016 and March 1, 2016, after

seeing Plaintiff for an independent medical examination.  (ECF No. 9,

PageID.1210-1226.)  Plaintiff focuses on those portions in which Dr. Jilani opined

that she was unable to sit, stand, and walk for a full eight-hour day; she could use

her fingers for gross and fine motor activities two hours of an eight-hour day; and

she would be restricted to working four hours per day, which Plaintiff asserts "is

completely consistent with Dr. O'Brien's November, 2009 restriction[.]"  (ECF

No. 13, PageID.1293-1294 (citing ECF No. 9, PageID.330, 1193, 1226).)[4]

#### b.    ALJ Zimmerman assigned the opinions "little weight"

In assigning "little weight" to Dr. Jilani's opinions, ALJ Zimmerman stated:

In February 2016, independent examiner Dr. Jilani opined as follows:
the claimant can stand for one-half an hour at a time for a maximum
of one hour in four hours per day.  She can walk one half hour at a
time for a maximum of two hour[s] in four hours per day.  She can
drive for 30 minutes at a time for 90 minutes in four hours per day.
She can lift and carry 10 pounds occasionally.  She can push and pull
20 pounds occasionally.  She can reach above shoulder level
occasionally.  She can reach at waist level frequently.  She can reach
below waist level occasionally.  She can perform fingering, handling,
and feeling occasionally.  She can never stoop or crouch (24F/17).
Dr. Jilani examined the claimant, but the doctor did not have a treating
relationship with the claimant.  Furthermore, this opinion is
inconsistent with Dr. Jilani's own examination findings.  As discussed
above, Dr. Jilani found the claimant could get in and out of the

---

[4] PageID.1193 appears to be an incorrect citation.

examination chair without assistance. This certainly indicates that the claimant could stoop and crouch. Additionally, the claimant had good muscle tone, strength, reflexes, and functional range of motion. She was also able to walk on her toes and heels and her gait was independent without an assistive device (24F). These findings show that the claimant could sit, stand, and walk for more than four hours combined total per day. Moreover, this opinion is inconsistent with the claimant's reported activities of daily living. The claimant reported that she was independent in her activities of daily living and self-care. While she reported that her family helped with advanced chores such as yard work and lifting laundry, she indicated that she was otherwise able to do household chores (24F/1). In addition, this opinion is inconsistent with the examination findings and treatment history of the claimant's providers discussed throughout this decision. Finally, Dr. Jilani provided this opinion after the claimant's date last insured. Therefore, the undersigned gives little weight to Dr. Jilani's opinion.

(ECF No. 9, PageID.494.)

### c.   Analysis

The ALJ's finding that Dr. Jilani examined but did not have a treating relationship with Plaintiff was a proper consideration under 20 C.F.R. § 404.1527(c). *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (generally, more weight should be given to the opinion of a treating source than to the opinion of a source that has examined, but not treated, the claimant). Also appropriate was the ALJ's finding that Dr. Jilani examined Plaintiff and offered his opinion *after* her DLI of December 31, 2015. To be relevant to the disability decision, "[p]ost-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F.

30

App'x 478, 480 (6th Cir.2003) (citing *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205–06 (6th Cir.1990)).  It is true, as Plaintiff asserts (ECF No. 13, PageID.1304; ECF No. 21, PageID.1373-1374), that Dr. Jilani's opinion was relatively close in time to her DLI, and that Dr. Jilani reviewed her prior records, but as Defendant argues, Dr. Jilani appears to have framed his opinion in the present tense (*see* ECF No. 9, PageID.1223-1226).

While Plaintiff's argument that an ALJ cannot substitute his or her own judgment for that of a medical provider is well taken, the remainder of the ALJ's reasoning consists of valid considerations, and she creates an accurate and logical bridge between the evidence and her conclusions.  *See Gross v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 824, 829-30 (E.D. Mich. 2017).  ALJ Zimmerman appropriately looked to the consistency of Dr. Jilani's opinion with his own examination findings and connected the two, stating:

> Dr. Jilani found the claimant could get in and out of the examination chair without assistance.  This certainly indicates that the claimant could stoop and crouch.  Additionally, the claimant had good muscle tone, strength, reflexes, and functional range of motion.  She was able to walk on her toes and heels and her gait was independent without an assistive device (34F).  These findings show that the claimant could sit, stand, and walk for more than four hours combined total per day.

(ECF No. 9, PageID.494.)  And as provided above, the ALJ thoroughly discussed the medical evidence of record throughout her decision before finding Dr. Jilani's opinion inconsistent with that evidence.  (*See* ECF No. 9, PageID.490-491.)

31

Finally, although again a somewhat weaker justification, the ALJ properly considered the disparity between Plaintiff's activities of daily living and Dr. Jilani's proffered limitations. *See Heston.*, 245 F.3d at 536; *Shepard*, 705 F. App'x at 441-42. It is true that "[t]he Social Security Administration and the 6th Circuit have made clear that the ability to perform minimal daily activities does not equate to the ability to perform work activities on a regular basis, 40 hours a week." *Coloske v. Comm'r of Soc. Sec.*, No. 12-15198, 2014 WL 1048156, at *7 (E.D. Mich. Mar. 18, 2014) (Berg, J., *adopting report and recommendation of* Hluchaniuk, M.J.). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (evidence of minimal daily activities relevant if it demonstrates that the claimant can perform the activities on a sustained basis) (citing 20 C.F.R. § 404.1520a(c)(2)). However here, Dr. Jilani's own notes, using what would appear to be Plaintiff's own reports, state: "She is independent with her basic activities of daily living and self care. She does not use any assistive device. She is able to do her own house chores. However, she has family available to help her for advanced chores such as yard work, lifting laundry or any heavy objects, she does her own groceries and her son helps her lifting the groceries and pushing the cart." (ECF No. 9, PageID.1210.)

### 4. Physiatrist Babu Nahata, M.D.

#### a. Opinion

Plaintiff was treated by physiatrist Babu Nahata, M.D., between 2011 and 2016.  (*See* ECF No. 9, PageID.986-1089, 1099-1107, 1123-1209.)  On October 31, 2016, Dr. Nahata completed a one-page form on which he: listed Plaintiff's diagnoses; circled "yes" in response to whether Plaintiff's level of pain or discomfort would affect her ability to concentrate or sustain activity over a prolonged period; opined that Plaintiff would miss 10-15 days of work in a typical 30-day month; and circled "no" in response to the prompt "[p]lease state if this patient would be able to perform sustained work activity at a sedentary exertional level (i.e. desk job) over an 8 hour work day without the need to lay down or take several unscheduled rest breaks due to pain and/or fatigue."  (ECF No. 9, PageID.1207.)

### b.    ALJ Zimmerman gave the opinion "little weight"

The ALJ properly acknowledged Dr. Nahata's status as a specialist as well as his treatment relationship with Plaintiff, but still gave the opinion "little weight," stating:

> However, Dr. Nahata provided this opinion 10 months after the claimant's date last insured and the doctor appears to be evaluating the claimant's condition at that time rather than during the relevant period.  Furthermore, neither Dr. Nahata's own treatment notes nor the rest of the record provides support for this opinion.  As discussed above, while Dr. Nahata did find tenderness throughout and some mild sensory deficits and decreased reflexes at times, the claimant's range of motion was largely functional.  Her strength was also often 4 to 4+/5.  She walked without an assistive device (18F; 20F; 22F).  Moreover, this opinion is not consistent with the evidence discussed

throughout this decision, including the physical examination findings, activities of daily living, and treatment history.  The undersigned thus gives little weight to Dr. Nahata's opinion.

(ECF No. 9, PageID.494.)

Plaintiff challenges the ALJ's finding that Dr. Nahata's restrictions were not consistent with his own treatment notes, citing notes documenting muscle spasms, trigger points, reduced strength, decreased sensation, and tenderness in the cervical spine, sacroiliac joints, and shoulder.  (ECF No. 13, PageID.1301-1305 (with multiple citations to the record); ECF No. 21, PageID.1374-1375.)  But the ALJ thoroughly reviewed these records in her decision, and still discounted Dr. Nahata's opinion.  Specifically, she stated:

> On examination with her physiatrist, Babu Nahata, M.D., also throughout the relevant period, the claimant had some tenderness in her neck, back, and shoulders.  At times, she also had tenderness in her elbows, hips, wrists, and knees, and mild sensory deficits and decreased reflexes.  However, she only had "slight" or "mild" limitation in her neck and low back.  At times, her range of motion was mostly within the functional limits.  Spurling's test and straight leg raising were negative.  Her strength was often 4 to 4+/5. Generally, her reflexes and sensation were intact.  She walked without an assistive device (18F; 20F; 22F).

(ECF No. 9, PageID.490.)  To reverse or remand on this ground would require the Court to re-weigh the evidence, which it should not do.  *Reynolds*, 424 F. App'x at 414.  *See also Blakley*, 581 F.3d at 406 (if substantial evidence supports the ALJ's determination it should be upheld, even if there is substantial evidence in the record that would have supported the opposite conclusion).

The same applies to the ALJ's finding that Dr. Nahata's opinion is inconsistent with much of the other record evidence, for the same reasons described above with regard to Dr. O'Brien's opinions.  As Defendant asserts, the ALJ appears to incorporate by reference the same evidence discussed earlier in the opinion to discount Dr. O'Brien's similar opinions.  (ECF No. 9, PageID.494.)

Finally, it was appropriate for the ALJ to discount Dr. Nahata's opinion on the basis that it was given 10 months after Plaintiff's DLI.  *Wirth*, 87 F. App'x at 480.  Although he treated Plaintiff for several years prior, there is no indication that he was opining upon Plaintiff's limitations during the relevant period.  Indeed, the three questions on the form ask what Plaintiff "would" be able to do, implying at the present time.  (ECF No. 9, PageID.1207.)

### 5.    Dr. Birjitender Singh

Plaintiff asserts that she began treating with Dr. Birjitender Singh, M.D., upon Dr. O'Brien's retirement.  (ECF No. 13, PageID.1294, 1306.)  In a progress note from June 27, 2016,[5] Dr. Singh indicated that he had prescribed Butalbital to be taken by mouth "twice daily as needed," and stated, "Do not drive or work, as it

---

[5] The top of each page lists the encounter date as March 9, 2015, but as Defendant asserts (ECF No. 20, PageID.1351 n.13), this appears to be the result of auto-population, because the beginning of the progress note clearly states that the note was made June 27, 2016, at 12:29 PM (ECF No. 9, PageID.1232.)

can make dizzy and or drowsy, can impair your judgment, especially combining narcotics, muscle relaxant, benzodiazepines." (ECF No. 9, PageID.1235.)

It bears noting first, as Defendant asserts (ECF No. 20, PageID.1352), that the prescription and Dr. Singh's guidance not to work is likely not a medical opinion and therefore not subject to the evaluation requirements set forth in 20 C.F.R. § 404.1527.  Under 20 C.F.R. § 404.1527(a), medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  Here, the guidance relates only to the side effects Plaintiff may experience should she need to take the prescribed medication, rather than the general severity of her impairments or associated limitations.  In other words, while it may have been a *warning*, it was neither diagnostic nor prognostic.

Regardless, ALJ Zimmerman appears to have nonetheless evaluated this as a medical opinion, and the Court should find that her evaluation was proper.  Specifically, she stated:

> In June 2016, primary care provider Dr. Singh added a migraine medication, Butalbital, and advised the claimant not to drive or work when taking it secondary to possible dizziness and drowsiness (25F/9).  Dr. Singh prescribed this medication after the claimant's date last insured.  Additionally, there is no evidence that Dr. Singh intended the claimant to take this medication on a continual basis

36

> because it is breakthrough rather than preventative medication.  The
> treatment notes even indicate that the claimant should take the
> medication "as needed" (25F/9).  Accordingly, the undersigned gives
> little weight to this medication related opinion.

(ECF No. 9, PageID.494-495.)  Indeed, as provided above, the treatment note

indicates that the medication was to be taken by Plaintiff "as needed."  (ECF No. 9,

PageID.1235.)  And rather than pointing to evidence in the record that she actually

took the medication, and experienced the related side effects, Plaintiff simply

hypothesizes that "even if [she] was only taking the medication once per week, that

would be consistent with Dr. O'Brien's opinion of missing 4 or more days per

month" (ECF No. 13, PageID.1306), and that "the fact that [Dr. Singh] continued

Plaintiff off work due to the side effects of the medication reflects that the doctor

expected [her] to need the medication on a continued basis."  (ECF No. 21,

PageID.1376.)  Moreover, based on the Court's attempt to find discussion of it in

the transcripts, Plaintiff does not appear to have specified side effects when

discussing her *existing* medications at her various hearings, although when asked

directly about Neurontin and Tramadol, she stated that she *stopped taking* both

because of side effects (anxiety, depression and lightheadedness) and that she was

not sure if her nausea was from these medications "or the liver enzymes.

Something's not quite right."  (*See, e.g.*, ECF No. 9, PageID.80-82, 86, 575-576,

583.)  Such speculation is not enough for the Court to find that the ALJ improperly

evaluated the opinion by Dr. Singh.

Additionally, it was appropriate for the ALJ to consider the fact that Dr.

Singh prescribed this medication after Plaintiff's DLI.  And Plaintiff offers no

argument otherwise.

### 6.    Dr. Stephen Kaplan

At the most recent administrative hearing, Dr. Stephen Kaplan testified as a

medical expert after having reviewed the file and listened to Plaintiff's testimony.

(ECF No. 9, PageID.524-535.)  ALJ Zimmerman summarized and weighed Dr.

Kaplan's opinion testimony as follows:

> The medical expert, Dr. Kaplan, opined the following at the
> November 3, 2016 hearing based on the undersigned's questions:
> fibromyalgia was the claimant's significant impairment and peripheral
> neuropathy was a secondary impairment.  The claimant's
> fibromyalgia did not meet a listing because there was no listing
> specific to it.  It also did not equal a listing.  The claimant was limited
> to sedentary work.  The work should be low stress both physically and
> mentally.  Physically, the claimant should not use her large muscles
> on a regular basis.  For example, the claimant should not be on her
> feet for six to eight hours per day.  Frequent handling and feeling with
> the upper extremities would not be too much use of the large muscles.
> Reaching, except for overhead reaching, could also be done
> frequently.  Mentally, tolerating occasional changes could possibly
> constitute low stress.  The undersigned gives great weight to this
> portion of Dr. Kaplan's opinion.  Dr. Kaplan did not treat or examine
> the claimant.  However, he is a specialist in rheumatology and he is
> familiar with Social Security disability program and its requirements.
> He also had the opportunity to review the claimant's medical records
> and listen to her testimony at the current hearing.  Furthermore, he
> supported his opinion with citations to the record.  Significantly, this
> portion of Dr. Kaplan's opinion is consistent with the physical
> examination findings, the claimant's treatment history, and daily
> activities discussed above.  On examination, the claimant often had
> largely normal range of motion, strength, reflexes, and sensation (5F;

38

12F; 17F; 18F; 20F; 22F; 25F). She did not use an assistive device for ambulation. She was also largely independent in her activities of daily living and self-care (3E; 24F/1). The undersigned notes, though, that these physical examinations and activities indicate that the claimant was capable for four hours of standing and walking rather than only two hours, as implied by Dr. Kaplan's opinion that the claimant should be limited to sedentary work (20 CFR 404.1567; POMS DI 25001.001). The undersigned also notes that four hours of standing and walking is less than the six to eight hours that Dr. Kaplan indicated would be problematic.

In response to the representative's questions, Dr. Kaplan also opined that the claimant would benefit from a sit/stand at will option. Dr. Kaplan was not confident predicting that the claimant would need to be absent four days or more per month because he had not personally examined the claimant. He also indicated that the literature indicated that it was possible that someone with fibromyalgia might miss that much work but that it was possible that someone with proper care might not. Ultimately, though, Dr. Kaplan indicated that he did not dispute Dr. O'Brien's and Dr. Nahata's opinion that the claimant might miss four or more days of work per month. Dr. Kaplan also did not dispute Dr. O'Brien's and Dr. Nahata's opinion that the claimant would require unscheduled rest breaks. According to Dr. Kaplan, though, the claimant might not need such breaks within a year with proper treatment. The undersigned gives little weight to this portion of Dr. Kaplan's opinion for the following reasons. The evidence does support a changing position limitation. However, a sit/stand "at will" option lacks specificity regarding the time for each activity at one time and is not support[ed] by the record. As noted above, while the claimant did often have tenderness on examination, examinations otherwise often lacked significant findings (5F; 12F; 17F; 18F; 20F; 22F; 25F). Additionally, indicating that the claimant would benefit from a sit/stand at will option is not necessarily saying that such an option is required. Furthermore, and more significantly, not disputing the absences and breaks opinions is not the same as Dr. Kaplan adopting those opinions on his own. Additionally, Dr. Kaplan's statements on those opinions were conditional and depended on the claimant's response to treatment. Dr. Kaplan specifically indicated that he did not feel confident making absence predictions. He also indicated that the claimant might not need unscheduled breaks with

> proper treatment.  Finally, although Dr. Kaplan did not dispute Dr.
> O'Brien's and Dr. Nahata's opinion on absences and unscheduled
> breaks, he did indicate that it would make a difference whether the
> opinion came from a primary care provider or a rheumatologist.
> According to Dr. Kaplan, a rheumatologist might be a bit more
> demanding in that they might encourage those with fibromyalgia to be
> more active than primary care providers would.  In this case, Dr.
> O'Brien was a primary care provider and Dr. Nahata was a physiatrist.
> There is no evidence that either specialized in rheumatology.

(ECF No. 9, PageID.495-496.)

Plaintiff does not acknowledge the ALJ's assignment of great weight to

some of Dr. Kaplan's opinions.  Instead, in her summary judgment motion,

Plaintiff challenges the ALJ's findings regarding the sit/stand at will option, as

well as her conclusions that Dr. Kaplan's opinions are not supported by the

medical evidence of record.

### a.    Sit/stand option

At the hearing, Dr. Kaplan answered "[y]es" when asked the following

question by Plaintiff's counsel: "Doctor, Ms. Rivette's physicians have imposed a

number of restrictions on her and I was hoping you could tell me if you would

agree if they would be reasonable considering her fibromyalgia and chronic pain.

Would you agree that she would benefit from the ability to sit or stand at will?"

(ECF No. 9, PageID.532.)

The ALJ's determination that a sit/stand at will option is not specific enough

serves as weak support for her decision to discount this portion of Dr. Kaplan's

opinion.  It is not uncommon for an RFC to include the option to alternate between sitting and standing at will.  *See Chance v. Comm'r of Soc. Sec.*, No. 3:21-CV-00156-DAR, 2022 WL 1046088, at \*4 (N.D. Ohio Apr. 7, 2022) (in the Sixth Circuit, an at will sit/stand option may be sufficiently specific).

However, I find no fault with the ALJ's statement that Dr. Kaplan agreed Plaintiff would benefit from an at-will sit/stand option, but did not testify that she required such an option.  That is accurate.  And most relevant and proper is the ALJ's finding that Plaintiff's need for an at-will sit/stand option is unsupported by the record.  In making this finding, she incorporated the same evidence used to discount similar limitations opined by Drs. O'Brien and Nahata (ECF No. 9, PageID.490-496), and for the same reasons provided in greater detail above, the Court should find no error in this evaluation.

### b.   Unscheduled breaks and absences

In her summary judgment motion, Plaintiff just generally challenges the ALJ's finding that Dr. Kaplan's opinions (assuming those related to unscheduled breaks and absences) are not supported by the record.  (*See* ECF No. 13, PageID.1307-1308.)  But, for all of the same reasons repeated throughout this report, the Court should decline to re-weigh the evidence or find fault with the ALJ's determination that these opinions are unsupported by the record.  As

provided above, she thoroughly analyzed the evidence of record and provided good reasons for discounting similar medical opinions on that basis.

And the Undersigned sees no fault with the ALJ's additional reasons for discounting Dr. Kaplan's opinions regarding unscheduled breaks and absences. As the ALJ reasoned, Dr. Kaplan's testimony regarding missing days of work was inconclusive and conditioned upon her response to treatment. Indeed, when asked if he would consider it reasonable that Plaintiff would likely miss four days of work per month as a result of her pain, he stated:

> Well, to tell you the truth, I don't ever feel confident making those kinds of predictions, particularly in light of the -- the literature which says that significant number of people with this condition can return to a workplace and particularly with, as I say, use of the behavioral modification techniques, that certainly could change within the years. So I'm not comfortable telling you that for the next year or so, that that necessarily -- besides the fact that I've never seen, examined the lady, so I don't think I'm personally -- that my answer is necessarily a very significant one.

(ECF No. 9, PageID.532-533.) When further pressed as to whether he would dispute the opinion of two other doctors who opined that she would miss four or more days per month, Dr. Kaplan said: "Dispute it? No." (ECF No. 9, PageID.534.) These opinions can hardly be described as brimming with confidence.

When asked by Plaintiff's counsel if he would dispute other physicians' opinions that as a result of her pain, Plaintiff would have to take unscheduled

42

breaks, Dr. Kaplan answered, "I wouldn't dispute it except to say with the treatment today, that as I answered you before, it's possible that within a year, she might be able to not be -- have to do that." (ECF No. 9, PageID.534.) And finally, upon questioning from the ALJ, Dr. Kaplan stated that it would make a difference to him if an opinion was proffered by a primary care provider rather than a rheumatologist because primary care doctors tend to have their patients stop doing physical therapy, whereas rheumatologists are "more demanding" and "encourage[] people to be more active than they otherwise might be." (ECF No. 9, PageID.535.) Accordingly, I see no error in the ALJ's summary and analysis of Dr. Kaplan's testimony.

Unsettling as it may be to a claimant when the ALJ discounts a number of medical opinions in one decision, in these circumstances, the Undersigned believes reversal on the basis of improper evaluation of this medical opinion would require re-weighing the evidence, which again, the Court must not do. *Reynolds*, 424 F. App'x at 414.

### 7.    The Court should find no error in the ALJ's Step 4 finding

Plaintiff asserts that, under *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), the ALJ was required to adopt the finding of the previous two ALJs that

43

she was unable to perform her past relevant work. (ECF No. 13, PageID.1309-1311; ECF No. 21, PageID.1378-1380.)

The Court need not analyze Plaintiff's argument regarding *Drummond* and *Dennard*, as any error at Step 4 is harmless in light of the fact that the ALJ made alternate findings at Step 5 that other jobs existed in significant numbers in the national economy that Plaintiff could perform. (ECF No. 9, PageID.497-498.) *Foster v. Comm'r of Soc. Sec.*, No. 14-CV-11437, 2015 WL 4394282, at *8 (E.D. Mich. July 16, 2015) (Murphy, J., adopting report and recommendation of Patti, M.J.). *See also Gaskin v. Comm'r of Soc. Sec.*, No. 14-10859, 2015 WL 268335, at *9 n.2 (E.D. Mich. Jan. 21, 2015) (Roberts, J. accepting report and recommendation of Binder, M.J.) ("I suggest that any legal error at step four is harmless in view of the ALJ's alternate finding at step five that other jobs existed in significant numbers in the national economy that claimant could still perform."). Accordingly, the Court should find no error at Step 4.

## F.    Conclusion

Plaintiff has the burden of proof on statements of error. Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence. For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment

(ECF No. 20), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: March 2, 2023

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE